## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA BLY<br>3900 Connecticut Avenue, N.W.<br>Washington, DC 20008,<br>on behalf of herself and all others similarly<br>situated,<br><br>Plaintiff,<br>vs.<br><br>ALLIANCE SEMICONDUCTOR CORP.<br>2900 Lakeside Drive<br>Santa Clara, California 95054;<br><br>CYPRESS SEMICONDUCTOR CORP.<br>198 Champion Court<br>San Jose, California 95134;<br><br>ETRON TECHNOLOGY, INC.<br>Technology Road 5, Hsinchu Science Park,<br>Hsinchu, Taiwan 30078;<br><br>ETRON TECHNOLOGY AMERICA, INC.<br>3375 Scott Boulevard, Suite 128<br>Santa Clara, California 95054;<br><br>GSI TECHNOLOGY, INC.<br>2360 Owen Street<br>Santa Clara, California 95054;<br><br>HITACHI, LTD.<br>6-6 Marunouchi 1-Chrome, Chiyoda-ku,<br>Tokyo, 100-8280 Japan.;<br><br>HYNIX SEMICONDUCTOR, INC.<br>SAN 136-1, Ami-Ri Bubal-eub, Ichon-Si,<br>Kyoungki-do, Korea;<br><br>HYNIX SEMICONDUCTOR AMERICA,<br>INC.<br>3101 North First Street<br>San Jose, California 95134;<br> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Judge**

**Case No.**

**CLASS-ACTION COMPLAINT**

**(Jury Trial Demand)**

CASE NUMBER    1:06CV01934

JUDGE: Gladys Kessler

DECK TYPE: Antitrust

DATE STAMP: 11/13/2006

INTEGRATED SILICON SOLUTION, INC.;
2231 Lawson Lane
Santa Clara, California 95054;

MICRON TECHNOLOGY, INC.;
8000 South Federal Way
Boise, Idaho 83707

CRUCIAL TECHNOLOGY, INC.
3475 E. Commercial Court
Meridian, Idaho 83642;

MITSUBISHI ELECTRIC CORP.
2-7-3, Marunouchi, Chyoda-ku
Tokyo 100-8310, Japan;

MITSUBISHI ELECTRIC & ELECTRONICS
USA, INC.
6556 Plaza Drive
P. O. Box 6007
Cypress, California 90630;

NEC ELECTRONICS CORP.
1753 Shimonumabe
Nakahara-Ku
Kawasaki Kanagawa 211-8668, Japan;

NEC ELECTRONICS AMERICA, INC.
2880 Scott Boulevard
Santa Clara, California 95050;

RENESAS TECHNOLOGY CORP.
4-1, Marunouchi 2-Chrome, Chiyoda-ku
Tokyo 100-6334, Japan;

RENESAS TECHNOLOGY AMERICA, INC.
450 Holger Way
San Jose, California 95134;

SAMSUNG ELECTRONICS CO., LTD.
250-2 ga, Taepyung-ro Chung-gu
Seoul, Korea;

SAMSUNG ELECTRONICS AMERICA
105 Challenger Road

2

Ridgefield Park, New Jersey 07660;
SONY CORP.
6-7-35 Kitashinagawa, Shinagawa-ku
Tokyo, 141-0001 Japan;

SONY ELECTRONICS, INC.
6450 West Bernardo Drive
San Diego, California 92127;

TOSHIBA CORP.
1-1 Shibaura, 1-Chrome Minato-ku
1-2 Tokyo 105-8001, Japan;

TOSHIBA AMERICA ELECTRONIC
COMPONENTS
9775 Toledo Way
Irvine, California 92618;

WINBOND ELECTRONICS CORP.
4 Creaton Road, 111, Science-Based Industrial
Park
Hsinchu, Taiwan, R.O.C.;

WINBOND ELECTRONICS CORP.
AMERICA
2727 North First Street
San Jose, California 95134;

FUJITSU LTD.
1-5-2 Higashi-Shimbashi, Minato-ku
Tokyo 105-7123, Japan;

FUJITSU AMERICAN, INC.
1250 Arques Ave.
M/S 124 Sunnyvale, CA  94085;

INTERNATIONAL BUSINESS MACHINES
CORP.
New Orchard Road, Armonk
NY  10504;

IBM MICROELECTRONICS, LTD.
50 Hines Road, Suite 240, Toronto, Ontario,
Canada K2KMS;

3

SEIKO EPSON CORP.
3-3-5 Owa, Suwa
Nagano, Japan;

EPSON AMERICA, INC.
3840 Kilroy Airport Way
Long Beach, CA  90806;

EPSON ELECTRONICS AMERICA, INC.
150 River Oaks Parkway
San Jose, CA  95134;

SHARP CORP.
22-22 Nagaike-cho
Abeno-ku, Osaka 545-8522;

SHARP ELECTRONICS CORP.
Sharp Plaza
Mahwah, New Jersey 07430;

STMICROELECTRONICS N.V.
39 Chemin Du Camp–des–filles
1228 Plan-les-ouates
Geneva, Switzerland  1228;

 and

STMICROELECTRONICS, INC.
1210 Electronics Drive
M/S 2308
Carrollton, Texas  75006.

Defendants.

Plaintiff, Rebecca Bly, files this Complaint for injunctive relief on behalf of herself and all others similarly situated in the United States and, alternatively, for money damages on behalf of herself and all others similarly situated in the District of Columbia who purchased Static Random Access Memory ("SRAM") indirectly from Defendants, their predecessors, or their

4

controlled subsidiaries and affiliates from January 1, 1998 to December 31, 2005 (the "Class Period"), and for her complaint alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff's class-action lawsuit arises from Defendants' participation in a conspiracy to restrain the trade for and sale of SRAM. Plaintiff's Complaint alleges alternative claims on behalf of alternative classes: On behalf of consumers in all 50 states, Plaintiff alleges that she indirectly purchased SRAM from Defendants whose conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. §1, thus entitling Plaintiff and the 50-state class to injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. §26; Plaintiff alleges that she indirectly purchased Defendants' SRAM from Defendants, whose conspiracy violated D.C. Code §28-4501 *et seq.*, thus entitling Plaintiff and consumers in the District of Columbia to money damages; and Plaintiff alleges a claim for unjust enrichment under District of Columbia common law.

2.    Defendants produce, manufacture, distribute, and sell SRAM to customers throughout the U.S., including in the District of Columbia. During the Class Period, Defendants and their co-conspirators agreed, combined, and conspired with each other to fix, maintain, or stabilize prices and to allocate markets for the sale of SRAM. As a result, Plaintiff and class members paid higher SRAM prices than they would have paid in a competitive market and have been damaged as a result.

## JURISDICTION AND VENUE

3.    This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiff is a citizen of a State different from any defendant" and the aggregated amount

5

in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. ʼ 1332(d)(2) and (6). This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the U.S. and one or more of the Defendants is a citizen or subject of a foreign state." The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendants systematically and continually conduct business here and throughout the U.S., including marketing, advertising, and sales directed to District of Columbia residents.

4.     This Court has venue under 15 U.S.C. §22 and 28 U.S.C. §1391 because Defendants reside, transact business, or are found within this District, and a substantial part o the events giving rise to the claims arose in this District.

## PARTIES

5.     Plaintiff Rebecca Bly is a District of Columbia resident who indirectly purchased one or more of the Defendant's SRAM during the Class Period.

6.     Defendant ALLIANCE SEMICONDUCTOR CORPORATION is a publicly traded technology company (NASDAQ: ALSC). It is a Delaware corporation headquartered at 2900 Lakeside Drive, Santa Clara, California 95054. During the Class Period, Alliance Semiconductor Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

7.     Defendant CYPRESS SEMICONDUCTOR CORPORATION is a publicly traded technology company (NYSE: CY). It is a Delaware corporation headquartered at 198 Champion Court, San Jose, California 95134. During the Class Period, Cypress Semiconductor Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

6

8.     Defendant ETRON TECHNOLOGY, INC. maintains its corporate headquarters at No. 6, Technology Road 5, Hsinchu Science Park, Hsinchu, Taiwan 30078.  During the Class Period, Etron Technology, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

9.     Defendant ETRON TECHNOLOGY AMERICA, INC. is headquartered at 3375 Scott Boulevard, Suite 128, Santa Clara, California 95054.  During the Class Period, Etron Technology America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

10.    Defendant GSI TECHNOLOGY, INC. designs, develops, and markets high performance SRAM for the networking and telecommunications markets.  It is a Delaware corporation, headquartered at 2360 Owen Street, Santa Clara, California 95054.  During the Class Period, GSI Technology, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

11.    Defendant HITACHI, LTD. maintains its head offices at 6-6 Marunouchi 1-Chrome, Chiyoda-ku, Tokyo, 100-8280 Japan.  During the Class Period, Hitachi, Ltd. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

12.    Defendant HYNIX SEMICONDUCTOR, INC. maintains its head offices at SAN 136-1, Ami-Ri Bubal-eub, Ichon-Si, Kyoungki-do, Korea.  During the Class Period, Hynix Semiconductor, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

13.    Defendant HYNIX SEMICONDUCTOR AMERICA, INC. is a wholly owned and controlled subsidiary of defendant Hynix Semiconductor, Inc.  Hynix Semiconductor

America, Inc. is a California corporation located at 3101 North First Street, San Jose, California 95134. During the Class Period, it sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

14.    Defendant INTEGRATED SILICON SOLUTIONS, INC. is a Delaware corporation located at 2231 Lawson Lane, Santa Clara, California 95054. It is a publicly traded company (NASDAQ: ISSI). During the Class Period, Integrated Silicon Solution, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

15.    Defendant MICRON TECHNOLOGY, INC. is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707. It is a publicly traded company (NYSE: MU). During the Class Period, Micron Technology, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

16.    Defendant CRUCIAL TECHNOLOGY, INC. is a corporation with its principal place of business at 3475 E. Commercial Court, Meridian, Idaho 83642. Crucial Technology, Inc. is a division of Micron Semiconductor Products, Inc., a wholly owned subsidiary of Micron Technology, Inc. and during the Class Period manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

17.    Defendant MITSUBISHI ELECTRIC CORPORATION is a Japanese corporation with its principal place of business at 2-7-3, Marunouchi, Chyoda-ku, Tokyo 100-8310, Japan. During the Class Period, Mitsubishi Electric Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

18.    Defendant MITSUBISHI ELECTRIC & ELECTRONICS USA, INC. is a wholly owned subsidiary of Mitsubishi Electric Corporation and is located at 6556 Plaza Drive, P. O.

8

Box 6007, Cypress, California 90630.  During the Class Period, Mitsubishi Electric & Electronics USA, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

19.    Defendant NEC ELECTRONICS CORPORATION is located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8668, Japan.  During the Class Period, NEC Electronics Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

20.    Defendant NEC ELECTRONICS AMERICA, INC. maintains its corporate headquarters at 2880 Scott Boulevard, Santa Clara, California 95050 and its manufacturing plant in Roseville, California.  It is a wholly-owned subsidiary of NEC Electronics Corporation. During the Class Period, NEC Electronics America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

21.    Defendant RENESAS TECHNOLOGY CORPORATION is located at 4-1, Marunouchi 2-Chrome, Chiyoda-ku, Tokyo 100-6334, Japan.  During the Class Period, Renesas Technology Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

22.    Defendant RENESAS TECHNOLOGY AMERICA, INC. is located at 450 Holger Way, San Jose, California 95134.  During the Class Period, Renesas Technology America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

23.    Defendant SAMSUNG ELECTRONICS COMPANY, LTD. a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the Class Period, During the Class Period, Samsung

Electronics Company, Ltd. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

24.    Defendant SAMSUNG ELECTRONICS AMERICA is located at 105 Challenger Road, Ridgefield Park, New Jersey 07660.  During the Class Period, Samsung Electronics America manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

25.    Defendant SONY CORPORATION is located at 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo, 141-0001 Japan.    During the Class Period, Sony Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

26.    Defendant SONY ELECTRONICS, INC. is a wholly-owned subsidiary of Sony Corporation.  Sony Electronics Inc. is located at 16450 West Bernardo Drive, San Diego, California 92127.  During the Class Period, Sony Electronics, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

27.    Defendant TOSHIBA CORPORATION is located at 1-1 Shibaura, 1-Chrome Minato-ku, Tokyo 105-8001, Japan.    During the Class Period, Toshiba Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

28.    Defendant TOSHIBA AMERICA ELECTRONIC COMPONENTS is located at 9775 Toledo Way, Irvine, California 92618.  During the Class Period, Toshiba America Electronic Components manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

10

29.    Defendant WINBOND ELECTRONICS CORPORATION is headquartered at 4 Creaton Road, 111, Science-Based Industrial Park, Hsinchu, Taiwan, R.O.C.  During the Class Period, Winbond Electronics Corporation manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

30.    Defendant WINBOND ELECTRONICS CORPORATION AMERICA, located at 2727 North First Street, San Jose, California 95134, is a wholly-owned subsidiary of Winbond Electronics Corporation.  During the Class Period, Winbond Electronics Corporation America manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

31.    Defendant FUJITSU LTD. is a business entity organized under the laws of Japan with its principal place of business in Shidome City Center 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo 105-7123, Japan.  During the Class Period, Fujitsu Ltd. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

32.    Defendant FUJITSU AMERICA, INC. is a wholly owned and controlled subsidiary of Fujitsu, Ltd.  Fujitsu America, Inc. is a business entity organized under California law with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, CA  94085.  During the Class Period, Fujitsu America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

33.    Defendant INTERNATIONAL BUSINESS MACHINES CORP. is a business entity organized under New York law with its principal place of business at New Orchard Road, Armonk, NY   10504.   During the Class Period, International Business Machines Corp. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

34.    Defendant IBM MICROELECTRONICS, LTD. is a business entity organized under the laws of Canada with its principal place of business at 50 Hines Road, Suite 240, Toronto, Ontario, Canada K2KMS. During the Class Period, IBM Microelectronics, Ltd. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

35.    Defendant SEIKO EPSON CORP. is a business entity organized under the laws of Japan with its principal place of business at 3-3-5 Owa, Suwa, Nagano, Japan. During the Class Period, Seiko Epson Corp. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

36.    Defendant EPSON AMERICA, INC. is a wholly owned and controlled subsidiary of Seiko Epson Corp. with its principal place of business at 3840 Kilroy Airport Way, Long Beach, CA 90806. During the Class Period, Epson America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

37.    Defendant EPSON ELECTRONICS AMERICA, INC. is a wholly owned and controlled subsidiary of Seiko Epson Corp with its principal place of business at 150 River Oaks Parkway, San Jose, CA 95134. During the Class Period, Epson Electronics America, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

38.    Defendant SHARP CORP. is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522. During the Class Period, Sharp Corp. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

39.     Defendant SHARP ELECTRONICS CORP. is a wholly owned and controlled subsidiary of Sharp Corp. with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430.  During the Class Period, Sharp Electronics Corp. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

40.     Defendant STMICROELECTRONICS N.V. is a business entity organized under the laws of The Netherlands with is principal place of business at 39 Chemin Du Camp–des–filles, 1228 Plan-les-ouates, Geneva, Switzerland   1228.   During the Class Period, STMicroelectronics N.V. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

41.     Defendants STMICROELECTRONICS, INC. is a wholly owned and controlled subsidiary of STMicroelectronics N.V with is principal place of business at 1210 Electronics Drive, M/S 2308, Carrollton, Texas  75006.  During the Class Period, STMicroelectronics, Inc. manufactured, sold, and distributed SRAM throughout the U.S., including in the District of Columbia.

## CO-CONSPIRATORS AND AGENCY

42.     Certain other persons, firms, corporations and entities have participated as co-conspirators with Defendants in the violations and conspiracies alleged in this complaint.  In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged.

43.     At all relevant times, each Defendant was an agent of each of the remaining defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

Defendants are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this complaint. Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

44.     The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' affairs.

## FACTUAL ALLEGATIONS

### A.     The SRAM Industry

45.     SRAMs are integrated circuits that allow data to be digitally stored and retrieved at high speed. SRAM can support access times as low as 10 nanoseconds. SRAM is faster and more reliable than the more common DRAM (Dynamic Random Access Memory). Unlike DRAM, which must be periodically refreshed, SRAM will retain its contents as long as power remains applied. SRAM is a different product from DRAM, and Plaintiff asserts no claims with regard to DRAM herein.

46.     SRAM comes in a variety of sizes, process technologies, access speeds, and densities. Slower speed SRAMs serve as memory in products such as cellular telephones, pagers, and modems. Higher speed SRAMs serve as intermediate, or cache, memory in various computer systems such as workstations and servers.

47.     The SRAM industry is highly cyclical, with short product life cycles. Manufacturers sell SRAM with new and improved features at high margins until competitors

14

match the features. As competitors introduce SRAM with similar features on the market, the improved SRAM declines in price.

48.    Last year, SRAM revenues worldwide approached $3 billion.

**B.    SRAM prices fell steadily before the class period**

49.    Between 1994 and 1997, the number of SRAM manufacturers selling SRAM in the U.S. increased. During the same time period, the amount of SRAM manufacturing capacity increased worldwide, and prices if SRAM in the U.S. declined. The U.S. SRAM industry fell from profitability into steep losses.

50.    On information and belief, as a result of these price declines, each of the Defendants had experienced material decreases in selling prices, and, at times, were selling SRAM at or below manufacturing costs. All of the Defendants were facing an uncertain future if prices continued to decline.

**C.    Price fixing and rising SRAM prices during the Class Period**

51.    In view of the economic conditions of the industry, the Defendants entered into agreements designed to combat the price decline in the industry. These agreements had the effect both of artificially limiting the rate of SRAM prices declines, and at other times, of artificially increasing the SRAM prices.

52.    Price fixing in the high-technology semiconductor industry is not new. In 2005 and 2006, manufacturers of DRAM, including Defendants Samsung Electronics Company, Ltd. and Hynix Semiconductor, Inc. plead guilty to price fixing and have agreed to pay hundreds of millions of dollars in criminal fines.

53.    On October 12, 2006, Defendant Cypress Semiconductor acknowledged that it had been contacted by the U.S. DOJ in connection with an investigation into the SRAM market.

Since then, Defendant Samsung Electronics Company, Ltd., Mitsubishi Electric & Electronics U.S.A., and Toshiba have admitted being contacted by the DOJ. It has also been reported that the DOJ has contacted defendant Micron Technology, Inc.

## FRAUDULENT CONCEALMENT

54.    Plaintiff had no knowledge of Defendants' unlawful, self-concealing conspiracy and could not have discovered it at an earlier date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection of, and to fraudulently conceal, their contract, combination, or conspiracy.

55.    Plaintiff and the class members didn't discover and couldn't have discovered through the exercise of reasonable diligence the existence of the claims sued upon until shortly before commencing this civil action.

56.    Because the contract, combination, or conspiracy was kept secret by Defendants, Plaintiff was unaware of the fact that SRAM prices were secretly agreed-upon as alleged.

57.    Defendants actively concealed these facts by affirmatively leading those who purchased directly from them—Plaintiff and the class members—to believe that Defendants' conduct and the prices charged were competitive.

58.    Because of the conspiracy's fraudulent concealment, Plaintiff asserts that the applicable statutes of limitations have been tolled with respect to her claims.

## CLASS-ACTION ALLEGATIONS

59.    Plaintiff brings this class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and the following class members:

> **Injunctive-Relief Class**
> All persons and business entities in all 50 states that indirectly purchased products containing SRAM manufactured, sold, or

16

distributed by Defendants, other than for resale, from January 1, 1998 to December 31, 2005.

Excluded from the Injunctive-Relief Class are Defendants; entities in which Defendants have a controlling interest; Defendants' employees, officers, or directors; Defendants' legal representatives, successors, or assigns; judicial officers who may hear the case or related persons; and jurors or related persons.

Alternatively, Plaintiff brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following multi-state class:

**Money-Damages Class**
All people and business entities in the District of Columbia that indirectly purchased products containing SRAM manufactured, sold, or distributed by Defendants, other than for resale, from January 1, 1998 to December 31, 2005.

Excluded from the Money-Damages Class are Defendants; entities in which Defendants have a controlling interest; Defendants' employees, officers, or directors; Defendants' legal representatives, successors, or assigns; judicial officers who may hear the case or related persons; and jurors or related persons.

60.    Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

61.    Plaintiff does not know the exact size of the classes, since this information is in Defendants' exclusive control.  But based on the nature of the trade and commerce involved, Plaintiff believes that the alternative classes number in the millions and that the class members are geographically dispersed throughout the U.S. and/or the District of Columbia.  Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

62.    Plaintiff's claims within the respective classes are typical of other class members' claims because all class members were injured through the uniform misrepresentations and

17

omissions described and paid supra-competitive prices for products containing SRAM without being informed that they were paying illegal and improper prices. Accordingly, by proving her own claims, Plaintiff will presumptively prove the respective class members' claims.

63.    Common legal and factual questions among and within the respective classes exist, such as:

a.    Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

b.    Whether Defendants conspired to manipulate and allocate the market for SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

c.    The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

d.    The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

e.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

f.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia;

g.    Whether Defendants' conspiracy was implemented;

h.    Whether Defendants took steps to conceal their conspiracy from Plaintiff and the class members;

i.    Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the class members, and if so, the appropriate classwide measure of damages;

j.      Whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.      Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia, and to manipulate and allocate the market for SRAM marketed, distributed, and sold in the U.S. and/or the District of Columbia.

64.     Plaintiff can and will fairly and adequately represent and protect the respective class members' interests and have no interests that conflict with or are antagonistic to the class members' interests. Plaintiff's attorneys are experienced and competent in complex class action and consumer-antitrust litigation.

65.     Class certification of the respective, alternative classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

a.      Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective, alternative classes and, consequently, enormous economies to the court and parties exist in litigating the common issues on a classwide basis or, alternatively, bases, instead of on a repetitive individual basis or, alternatively, bases;

b.      Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.      Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

d.      Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a national class or, alternatively, in a District of Columbia class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost

19

effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class or, alternatively, classes.

66.    Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual class members, whether within or among the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede their ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

67.    Class certification, whether as a national class or District of Columbia class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class' members.

68.    Plaintiff's claims within and among the respective classes are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.*, Plaintiff and the respective class members were forced to pay supra-competitive prices for products containing SRAM).

## TRADE AND COMMERCE

69.    Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling SRAM throughout the U.S. During each year of the Class Period, Defendants sold billions of dollars of SRAM.

70.     The oligopolistic SRAM market is conducive to the conspiracy alleged here. The SRAM market is subject to high entry barriers. Efficient fabrication plants are large and expensive. SRAM is also subject to technological advances, so firms within the industry must undertake significant research and development expenses.

71.     Beginning in 1998 and continuing through 2001, SRAM prices rose, due in significant part to the effects of the collusion currently under DOJ investigation. During 2000, SRAM's average selling price in the U.S. increased by 33%. SRAM prices increased again in 2003 and afterwards due to Defendants' same illegal conspiracy.

72.     Electronic device manufacturers and SRAM resellers purchase SRAM directly or indirectly from Defendants and sell SRAM-containing products to consumers, including Plaintiff and all class members.

## CLAIMS

### COUNT I
**(Applicable to the Injunctive-Relief Class)**
**VIOLATION OF THE CLAYTON ACT**

73.     Plaintiff repeats and re-alleges paragraphs 1 through 72.

74.     During the Class Period, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize SRAM prices in the U.S., in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

75.     In formulating and carrying out their illegal agreement, understanding, and conspiracy, Defendants did the following things, among others:

        a.     Fixed, raised, maintained, and stabilized SRAM prices;

        b.     Allocated SRAM markets among themselves;

        c.     Rigged bids for the award and performance of SRAM contracts; and

      d.     Allocated SRAM production.

76.    Defendants' combination and conspiracy had the following effects, among others:

      a.     Price competition in the sale of SRAM was restrained, suppressed, and/or eliminated in the U.S.;

      b.     Prices for SRAM sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the U.S.; and

      c.     Those who purchased SRAM directly or indirectly from Defendants have been deprived of the benefits of free and open competition.

77.    Plaintiff has been injured and will continue to be injured in her business and property by paying more for SRAM purchased indirectly from Defendants then she would have paid and will pay in the absence of Defendants' conspiracy, including paying more for personal computers and other SRAM-containing products.

78.    As a proximate cause of Defendants' conspiracy, Plaintiff is entitled to an injunction against Defendants preventing and restraining Defendants' violations.

**COUNT II**
**(Applicable to the Money-Damages Class)**
**VIOLATION OF D.C. CODE §28-4501 *et seq.***

79.    Plaintiff repeats and re-alleges paragraphs 1 – 72.

80.    From January 1, 1998 through December 31, 2005, Defendants engaged in a flagrant contract, combination, or conspiracy in restraint of trade or commerce within the District of Columbia. In particular, Defendants conspired to fix SRAM prices and allocate SRAM customers and markets. Defendants' conspiracy lessened full and free competition in SRAM importation and sale into the District of Columbia and controlled its costs, which violated D.C. CODE §28-4501 *et seq.*

81.    Defendants' conspiracy caused them to (a) fix, raise, maintain, and stabilize SRAM prices; (b) allocate SRAM customers and markets; and (c) caused Plaintiff and the other District of Columbia class members to pay higher prices for SRAM that they indirectly purchased from Defendants.

82    In formulating and effectuating their conspiracy, Defendants and their co-conspirators:

    a.    Met to discuss SRAM customers and markets;

    b.    Agreed to charge prices at certain levels and to increase or maintain prices for SRAM sold in the District of Columbia;

    c.    Issued price announcements, quotations, and charged prices consistent with their illegal agreement; and

    d.    Allocated SRAM markets and customers consistent with their illegal agreement.

83.    Defendants' conspiracy had the following effects:

    a.    SRAM price competition was restrained, suppressed, and eliminated throughout the U.S., including in the District of Columbia;

    b.    SRAM prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the U.S., including in the District of Columbia;

    c.    Plaintiff and the other District of Columbia class members that indirectly purchased SRAM were deprived of free and open market competition and were injured; and

    d.    Plaintiff and the other District of Columbia class members paid more than they otherwise would have for SRAM that they purchased indirectly.

84.    Defendants' conspiracy substantially affected trade or commerce within the District of Columbia.

85.    During the Class Period, District of Columbia consumers indirectly purchased millions of dollars of Defendants' SRAM in the District of Columbia from Defendants.  By

reason of Defendants' violations of D.C. Code §28-1401 *et seq.*, Plaintiff and the District of Columbia class members paid significantly more for products containing SRAM that they would have paid in the absence of Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and the District of Columbia class members were injured in their businesses and property and have suffered damages in amounts presently undetermined.

### COUNT III
### (Applicable to the Money-Damages Class)
### UNJUST ENRICHMENT

86.    Plaintiff repeats and re-alleges paragraphs 1 through 72.

87.    As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiff and the class members.

88.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the District of Columbia class members suffered injury and seeks an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective class members' favor and against Defendants, as follows:

A.    That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify either or both classes;

B.    With respect to the Injunctive-Relief Class, that this Court rule that Defendants' conspiracy violated the Sherman Act and that injunctive relief under the Clayton Act is appropriate;

C.      With respect to the Money-Damages Class, that this Court rule that Defendants' conspiracy violated District of Columbia law and that compensatory damages, including treble damages, are appropriate;

D.      With respect to the Money-Damages Class, that this Court determine that Defendants were unjustly enriched and that restitution is appropriate;

E.      That this Court permanently enjoin Defendants from conspiring to fix SRAM prices and allocating SRAM markets or other injunctive relief as this Court deems appropriate;

F.      That this Court award Plaintiff post-judgment interest, her costs, and reasonable attorneys' fees; and

G.      That this Court order any other relief as it deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all triable issues.

Dated: November 13, 2006         Respectfully submitted,

Gary E. Mason (#418073)
Donna F. Solen (#465098)
THE MASON LAW FIRM
1225 19th Street Northwest, Suite 500
Washington, DC 20036
Telephone:    (202) 429-2290
Facsimile:    (202) 429-2294
E-mail:    gmason@masonlawdc.com
         dsolen@masonlawdc.com

Daniel K. Karon
GOLDMAN SCARLATO & KARON, P.C.
55 Public Square, Suite 1500
Cleveland, OH 44113-1998
Telephone:    (216) 622.1851
Facsimile:    (216) 622-1852
E-mail:    karon@gsk-law.com

25

Gordon Ball
BALL & SCOTT
Suite 601, 550 Main Ave.
Knoxville, TN 37902
Telephone:  (865) 525-7028
Facsimile:   (865) 525-4679

Krishna B. Narine
LAW OFFICE OF KRISHNA B. NARINE
7839 Montgomery Ave.
Elkins Park, PA 19027
Telephone:  (215) 771-4988
Facsimile:   (215) 782-3241
E-mail:      knarine@kbnlaw.com

Isaac L. Diel
SHARP McQUEEN P.A.
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS  66211
Telephone:  913-661-9931
Facsimile:   913-661-9935
E-Mail:      dslawkc@aol.com

***Attorneys for Plaintiff and the Alternative Classes***

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Rebecca Bly, on behalf of herself and all others similarly situated,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Dist. of Columbia_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gary E. Mason
Donna F. Solen
The Mason Law Firm, P.C.
1225 19th Street, NW, Suite 500
Washington, DC 20036
(202) 429-2290

## DEFENDANTS

Alliance Semiconductor Corp., et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Santa Clara, CA_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

◉ 3 Federal Question
     (U.S. Government Not a Party)

○ 2 U.S. Government
     Defendant

○ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

◉ **A.** *Antitrust*

[X] 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*          **OR**          ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| | | | |
|---|---|---|---|
| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| | | | |
|---|---|---|---|
| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of Section of the Sherman Act, 15 U.S.C. § 1, consumers who purchases SRAM indirectly from Defendants

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23   **DEMAND $** _____ Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE Nov. 13, 2006   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.